ERIE LAND AND IMPROVEMENT COMPANY, PLAINTIFF-APPELLANT, v. ELIAS JOHN SYMITAKOS, DEFENDANT-RESPONDENT.

Argued October 20, 1933—Decided January 12, 1934.

For the plaintiff-appellant, *George S. Hobart* and *John J. Gaffey*.

For the defendant-respondent, *Thomas L. Parsonnet*.

The opinion of the court was delivered by

KAYS, J.   This is an appeal from a judgment of the New Jersey Supreme Court against the Erie Land and Improvement Company, the appellant here, and in favor of Elias John Symitakos.   The action was in ejectment and the jury rendered a verdict of not guilty.

The complaint contained three counts.   The amount of land claimed by the plaintiff below, the Erie Land and Improvement Company, was divided into two parcels which were set up in the first and second counts respectively, and the third count claimed seven hundred fifteen and sixty-seven-one hundredths square feet of land which included the encroachments mentioned in the first and second counts.   At the close of the case plaintiff consented to a direction of a verdict in favor of the defendant on the first and second counts which was the land covered by a dwelling house, which dwelling house had been erected thereon over thirty years.   Therefore, the amount of land claimed by the plaintiff under the third count was about six hundred fifty-four and forty-six-one-hundredths square feet.   The answer set up the right of the defendant by adverse possession, by the statute of limitations and by denial of plaintiff's title.   From the judgment above stated plaintiff appeals here.

The appeal relates only to the judgment in so far as the same concerns the third count.   It appears from the evidence

that a branch of the Erie railroad runs into the city of Orange and terminates therein. This branch of the Erie is known as the Watchung branch. A short distance before the railroad track reaches the terminus it crosses White street and the house and property of the defendant adjoins the railroad on the west. The dispute between the parties is in regard to an irregular shaped piece of land in the rear of the defendant's house. The line disputed as described in the deeds runs in a southwesterly direction from the corner of the property on White street southwest to a corner of a piece of land which has been conveyed over thirty years ago by one O'Reilly. The dispute over this particular line is whether it was curved or straight between the two points mentioned in the deed. The defendant's surveyor testified that if the line were straight it would cut through a portion of the house which was located on the line described in counts one and two of the complaint. Therefore, since it was consented that judgment be entered in favor of the defendant as to the first and second counts we are not concerned with this particular question here. This left in dispute in the court below the land in the rear of the house which is a portion of the land described in the third count. The defendant rested his defense on adverse possession and the jury was so instructed by the court.

The first point for reversal relates to certain testimony produced by the defendant to the effect that eight or ten years before the trial, a man who represented himself as having been sent by the Erie Railroad Company visited the defendant and offered to exchange eight feet of land in front of the property for a strip eight feet in width in the rear of the property. This line of testimony was objected to when offered and the court asked the attorney for the defendant if he could connect this man as one authorized by the railroad company to make such an offer. Counsel finally said that he could and the testimony was, therefore, allowed to stand. In regard to this testimony the witness was asked: "At anytime did you ever have a conversation with anybody from the railroad company?" The defendant answered: "About

eight years ago there was a man from the Erie Railroad Company, and he has a kind of papers in his hands, and he told me——" (at this point objection was entered and the witness was then allowed to proceed). "He told me that if I would agree to give the railroad company eight feet of the front of my property and the Erie railroad should give me eight feet in the back." The witness further said, apparently correcting the above answer, as follows: "The Erie Railroad Company was willing to give me eight foot off the front if I should give the railroad company eight foot on the back of my property." There is nothing in the evidence later connecting the man mentioned by the defendant as an agent of the Erie Railroad Company or the Erie Land and Improvement Company. It seems clear that no authority was shown which would bind plaintiff or the Erie Railroad Company as to the statements made by the visitor at defendant's house about eight years ago. Defendant, however, claims that the evidence was admissible for the purpose of showing general hostility. Even though this may be so it was not restricted to such a purpose, and the jury could well have understood from the rulings of the court that it was offered for the purpose of showing admission of ownership in the defendant by the railroad company.

The next point urged for reversal is that the trial court erroneously instructed the jury in reference to the statute of limitations as follows: "Applying that to this case, assuming that the encroachment existed upon the plaintiff's lands, the plaintiff then became entitled to a right of entry upon that portion of the land encroached upon. If the plaintiff failed to exercise this right for a period of twenty years then it is barred from recovery under that theory of the case." Defendant admits that this part of the charge was not good law but contends, however, that the law was correctly stated elsewhere in the charge. In regard to this the rule is, that correct statements of law elsewhere in a charge do not offset the erroneous part of the charge unless the erroneous part is specifically withdrawn, otherwise the jurors would be left to choose which part of the charge they would accept as good

law and which part of the charge they would reject as erroneous.

We have examined the other points urged for reversal and find them without merit.

For the reasons above set forth the judgment under review will be reversed to the end that a *venire de novo* may be awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 16.